## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | | |
|---|---|---|
| **JAMES LORSHBAUGH** | ) | |
| | ) | |
| **PLAINTIFF,** | ) | **Civil Action No. 3:18-cv-394** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMMUNITY HEALTH SYSTEMS,** | ) | |
| **INC., TENNOVA HEALTHCARE, AND** | ) | |
| **PHYSICIANS REGIONAL MEDICAL** | ) | |
| **CENTER** | ) | |
| | ) | |
| **DEFENDANTS.** | ) | |

## COMPLAINT

All allegations in this complaint are based upon information and belief.

1.      Plaintiff institutes this action against Defendants alleging that by failing to provide Plaintiff with effective communication, Defendants discriminated against Plaintiff solely by reason of Plaintiff's disability because Defendants excluded Plaintiff from participation in and denied Plaintiff the benefits of their programs and activities in violation of Section 504 of the Rehabilitation Act of 1973 (hereinafter referred to as "Section 504"), 29 U.S.C. § 794 *et seq.*, and its implementing regulations.

2.      Plaintiff institutes this action against Defendants alleging that by failing to provide Plaintiff with effective communication, Defendants discriminated against Plaintiff because Defendants failed to afford Plaintiff, on the basis of his disability, with the opportunity to participate in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of their places of public accommodation in violation of Title III of the Americans with Disabilities Act (hereinafter referred to as "Title III of the ADA"), 42 U.S.C. § 12181 *et seq.* & § 12182 and its implementing regulations.

3. Plaintiff institutes this action against Defendants alleging that by failing to give primary consideration to the request of Plaintiff when determining necessary auxiliary aids or services to provide to Plaintiff, Defendants discriminated against Plaintiff because Defendants excluded Plaintiff from participation in and denied Plaintiff the benefits of their health programs and activities in violation of Section 1557 of the Affordable Care Act (hereinafter referred to as the "ACA"), 42 U.S.C. §18116; 45 C.F.R. § 92.202(a) (*referencing* 28 C.F.R. §§ 35.160-35.164).

4. Plaintiff alleges that Defendants' failure to provide Plaintiff with effective communication constitutes discrimination against Plaintiff solely by reason of Plaintiff's disability in violation of Section 504 and its implementing regulations.

5. Plaintiff alleges that Defendants' failure to provide Plaintiff with appropriate auxiliary aids and services, including qualified, on-site sign language interpreters, to ensure effective communication between Plaintiff and his healthcare providers constitutes discrimination against Plaintiff solely by reason of Plaintiff's disability in violation of Section 504 and its implementing regulations.

6. Plaintiff alleges that Defendants' failure to establish a procedure for effective communication with persons with hearing disabilities requiring emergency healthcare constitutes discrimination against Plaintiff solely by reason of Plaintiff's disability in violation of Section 504 and its implementing regulations.

7. Plaintiff alleges that Defendants' failure to provide Plaintiff with effective communication constitutes discrimination against Plaintiff on the basis of Plaintiff's disability in violation of Title III of the ADA and its implementing regulations.

8. Plaintiff alleges that Defendants' failure to provide appropriate auxiliary aids and services necessary to ensure effective communication between Plaintiff and his healthcare

providers constitutes discrimination against Plaintiff on the basis of Plaintiff's disability in violation of Title III of the ADA and its implementing regulations.

9.      Plaintiff alleges that Defendants requiring Plaintiff to bring another individual to interpret relevant medical information to Plaintiff constitutes discrimination against Plaintiff on the basis of Plaintiff's disability in violation of Title III of the ADA and its implementing regulations.

10.     Plaintiff alleges that Defendants' reliance on adults accompanying Plaintiff to interpret relevant medical information to Plaintiff constitutes discrimination against Plaintiff on the basis of Plaintiff's disability in violation of Title III of the ADA and its implementing regulations.

11.     Plaintiff alleges that Defendants' failure to provide Plaintiff with auxiliary aids and services in a prompt and timely manner and in a way that protected the privacy and independence of Plaintiff constitutes discrimination against Plaintiff on the basis of Plaintiff's disability under Title III of the ADA and its implementing regulations.

12.     Plaintiff alleges that Defendants failure to give primary consideration to the request of the Plaintiff when determining necessary auxiliary aids or services to provide to Plaintiff constitutes discriminate solely by reason of Plaintiff's disability in violation of the ACA and its implementing regulations.

13.     Plaintiff alleges that Defendants discriminated against Plaintiff on the basis of his disability in violation of Title III of the ADA and its implementing regulations, and solely by reason of Plaintiff's disability in violation of Section 504 and the ACA and their implementing regulations, by failing to have an established policy, procedure, practice, requirement and/or

3

custom which provides effective communication to Plaintiff and other deaf persons seeking medical treatment.

14.     Plaintiff alleges that Defendants discriminated against Plaintiff on the basis of his disability in violation of Title III of the ADA and its implementing regulations, and solely by reason of Plaintiff's disability in violation of Section 504 and the ACA and their implementing regulations, by failing to properly train their staff on how to provide effective communication to individuals who are deaf and hard of hearing.

15.     Plaintiff alleges that Defendants discriminated against Plaintiff on the basis of his disability in violation of Title III of the ADA and its implementing regulations, and solely by reason of Plaintiff's disability in violation of Section 504 and the ACA and their implementing regulations, by having a policy, procedure, practice, requirement, and/or custom that requires a deaf or hard of hearing individual to use Video Remote Interpreting (VRI) initially even when an on-site interpreter may be necessary to ensure effective communication.

16.     Plaintiff alleges that Defendants' discriminatory conduct against Plaintiff was intentional and/or committed with reckless disregard of and with deliberate indifference to Plaintiff's civil rights.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under Title III of the ADA, the ACA, and Section 504.

18.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391 in that the claim arose in the Eastern District of Tennessee and the Defendant conducts business in the Eastern District of Tennessee.

4

## PARTIES

19.  Plaintiff James Lorshbaugh (hereinafter, "Plaintiff") is a resident of Knoxville, Tennessee, which is in Knox County.

20.  Defendant Community Health Systems, Inc. (hereinafter referred to as "CHS") is a corporation formed under the laws of Delaware, does business in Tennessee, and has its principal office at 4000 Meridian Boulevard, Franklin, Williamson County, Tennessee 37067-6325.

21.  Defendant Tennova Healthcare is a limited liability company, does business in Tennessee, and has its principal office at 4000 Meridian Boulevard, Franklin, Williamson County, Tennessee 37067-6325.

22.  Defendant CHS has the sole and complete authority to operate and control the Tennova Healthcare facilities referenced in this Complaint.

23.  Defendant CHS and Defendant Tennova Healthcare have the sole and complete authority to operate and control the facilities of Defendant Physicians Regional Medical Center (hereinafter "PRMC"), which is a hospital facility and has its principal office and facilities at 900 East Oak Hill Avenue, Knoxville, Knox County, Tennessee 37917.

24.  Defendant CHS and Defendant Tennova Healthcare own, control, and/or operate PRMC.

25.  CHS, Tennova Healthcare, and PRMC will be referred to collectively as "Defendants."

26.  Defendants are principally engaged in the business of providing health care.

27.  Defendants are recipients of federal funds.

28.  Defendants participate in Medicare.

29.  Defendants participate in Medicaid.

30. Defendants employ more than fifteen persons.

FACTS

31. Plaintiff is deaf.

32. Plaintiff is an individual with a disability.

33. Plaintiff's deafness is a physical impairment which limits the major life activity of hearing.

34. Plaintiff's deafness is a physical impairment which limits the major life activity of speaking.

35. Plaintiff's deafness is a physical impairment which limits the major life activity of receptive and expressive spoken communication.

36. Plaintiff communicates primarily through American Sign Language (hereinafter "ASL").

37. Plaintiff requires the services of a qualified sign language interpreter to effectively communicate about complex information.

38. Plaintiff requires the services of a qualified sign language interpreter to effectively communicate about lengthy information.

39. Plaintiff requires the services of a qualified sign language interpreter to effectively communicate about Plaintiff's health.

40. Plaintiff requires the services of a qualified sign language interpreter to effectively communicate about Plaintiff's medical treatment.

41. Plaintiff requires the services of a qualified sign language interpreter to have equal access to his healthcare.

42. Plaintiff requires the services of a qualified sign language interpreter to communicate and exchange medically relevant information with healthcare staff.

43.     Medical information about diagnosis, risks of surgery, complications of surgery, informed consent for treatment or surgery, outcome of surgery, medication, side effects of medication, plan of care, and discharge is lengthy and complex.

44.     Plaintiff is currently a patient of a facility owned and operated by Defendant Tennova Healthcare and Defendant CHS. That facility is East Tennessee Heart Consultants—Physicians Regional (hereinafter referred to as "ETHC").

45.     Plaintiff has regularly scheduled office visits at ETHC.

46.     Plaintiff has plans to return to ETHC.

47.     PRMC is the closest hospital to Plaintiff's residence that provides emergency medical care.

48.     Plaintiff suffers from and continues to suffer from a heart condition which may require emergency treatment.

49.     In the event Plaintiff experiences emergency health problems, Plaintiff is at risk of being transported to PRMC by an ambulance service without regard to whether PRMC has taken steps to ensure the provision of effective communication with Plaintiff.

50.     Prior to September 19, 2017, Plaintiff had been a patient of facilities owned and operated by Defendant Tennova Healthcare and Defendant CHS, including ETHC and North Knoxville Medical Center (hereinafter "NKMC").

51.     Prior to September 19, 2017, Plaintiff had been provided with VRI at ETHC and NKMC.

52.     Prior to September 19, 2017, VRI provided by Defendant Tennova Healthcare and Defendant CHS at ETHC and NKMC failed to operate properly and in accordance with federal operating regulations, as referenced below in paragraph 53.

7

53.     Federal VRI regulations mandate: "A public accommodation that chooses to provide qualified interpreters via VRI service shall ensure that it provides—(1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter's face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI."  28 C.F.R. § 36.303(f).

54.     Prior to September 19, 2017, VRI provided by Defendant Tennova Healthcare and Defendant CHS at ETHC and NKMC had technical difficulties including audio cutting in and out, freezing images, and interruption in service.

55.     VRI at ETHC and NKMC did not meet the federal operating regulations referenced in paragraph 52 of this Complaint prior to September 19, 2017.

56.     Prior to September 19, 2017, VRI provided by Defendant Tennova Healthcare and Defendant CHS at ETHC and NKMC was unreliable.

57.     Prior to September 19, 2017, VRI provided by Defendant Tennova Healthcare and Defendant CHS at ETHC and NKMC did not provide effective communication to Plaintiff.

58.     VRI had technical difficulties and failed to provide Plaintiff with effective communication at ETHC on or about August 25, 2017, which was less than a month before Plaintiff's cardiac bypass surgery at PRMC.

59. The VRI disconnected up to 25 times in less than 25 minutes during Plaintiff's visit to ETHC on or about August 25, 2017, which was less than a month before Plaintiff's cardiac bypass surgery at PRMC.

60. ETHC is located in the same building as Defendant PRMC

61. On or about September 19, 2017, Plaintiff was admitted to PRMC for cardiac bypass surgery and was discharged on or about September 24, 2017 (hereinafter "September 2017 admission").

62. Prior to September 19, 2017, Plaintiff requested that Defendant PRMC provide Plaintiff with a qualified, on-site sign language interpreter during the September 2017 admission.

63. Plaintiff's primary choice for communication for the September 2017 admission was qualified, on-site interpreters.

64. Prior to September 19, 2017, staff at Defendant PRMC agreed to provide Plaintiff with qualified, on-site sign language interpreters for his September 2017 admission.

65. When Plaintiff arrived at PRMC in pre-op on or about September 19, 2017, Defendants failed to provide him with the on-site, qualified sign language interpreter as agreed to prior to this date.

66. Instead, staff at Defendant PRMC brought out VRI. Plaintiff did not wish to use the VRI to exchange medical information about his heart surgery because it had failed to provide him with effective communication during prior visits to ETHC and NKMC. Plaintiff was frightened that if he used the VRI that it would malfunction as it had done in the past in the same building, and that he would not be able to exchange medically relevant information with healthcare providers about his life or death surgery.

9

67.     Additionally, it was not appropriate for Defendants to use VRI in an attempt to communicate with Plaintiff during the majority of the September 2017 admission. After bypass surgery, Plaintiff was on his back, unable to move, in pain, and would have been unable to sit up in bed to see the VRI screen for much of the September 2017 admission.

68.     Plaintiff renewed his request for a qualified, on-site sign language interpreter prior to his bypass surgery on or about September 19, 2017.

69.     Defendants refused to provide Plaintiff with a qualified, on-site sign language interpreter prior to his bypass surgery on or about September 19, 2017.

70.     Defendants relied mainly on hand gesturing in an attempt to communicate with Plaintiff prior to his bypass surgery on or about September 19, 2017.

71.     Hand gestures did not provide Plaintiff with effective communication prior to his bypass surgery on or about September 19, 2017 about risks of the surgery, complications of the surgery, and informed consent for the surgery.

72.     Because Defendants failed to provide Plaintiff with effective communication on or about September 19, 2017, Plaintiff went into cardiac bypass surgery without having exchanged medically relevant information with his healthcare providers, including but not limited to, information about the risks of the surgery, complications of the surgery, and informed consent for the surgery.

73.     Because Defendants failed to provide Plaintiff with effective communication on or about September 19, 2017, Plaintiff went into bypass surgery uninformed, frightened, and distressed.

74.     On or about September 19, 2017, while Plaintiff was in recovery post-bypass surgery, Defendants relied on a friend of Plaintiff's to interpret medical information to Plaintiff.

75.     At this time, Plaintiff was intubated with an endotracheal tube.

76.     Plaintiff's friend ("First Friend") is not a qualified sign language interpreter.

77.     Plaintiff did not request that First Friend interpret for him.

78.     It was not appropriate for First Friend to interpret for Plaintiff because First Friend is not a qualified sign language interpreter.

79.     Defendants relied on this unqualified First Friend in an attempt to interpret and/or facilitate communication with Plaintiff about medically relevant information, including his endotracheal tube.

80.     Staff at PRMC relied on and expected First Friend to interpret for Plaintiff every time she visited him.

81.     Also, while Plaintiff was in recovery on or about September 19, 2017, Plaintiff had another friend ("Second Friend") who accompanied Plaintiff into recovery.

82.     This Second Friend is not a qualified sign language interpreter.

83.     Plaintiff did not request that Second Friend interpret for him.

84.     It was not appropriate for Second Friend to interpret for Plaintiff because Second Friend is not a qualified sign language interpreter.

85.     Defendants relied on this unqualified, Second Friend, in an attempt to interpret and/or facilitate communication with Plaintiff about medically relevant information.

86.     Based on their interactions with PRMC staff, both Plaintiff and Second Friend thought Defendants were going to provide Plaintiff with an on-site interpreter so that he could exchange medically relevant information with hospital staff.

87.     Defendants failed to provide Plaintiff with an on-site interpreter.

88.     Throughout the September 2017 admission, Defendants relied on unqualified, untrained friends of the Plaintiff in an attempt to communicate medically relevant information from hospital staff to Plaintiff.

89.     These attempts did not provide Plaintiff with effective communication at any time during the September 2017 admission.

90.     Throughout the September 2017 admission, Plaintiff renewed his request for Defendants to provide him with qualified, on-site sign language interpreters.

91.     At no time did Defendants provide Plaintiff with qualified, on-site sign language interpreters during the September 2017 admission.

92.     Defendants failed to provide Plaintiff with effective communication about medically relevant information related to pre- and post-cardiac surgery for approximately five days during the September 2017 admission.

93.     Plaintiff was confused and did not know what was happening before and after his cardiac bypass surgery and throughout the September 2017 admission.

94.     Throughout the September 2017 admission, Defendants failed to provide Plaintiff with effective communication to discuss Plaintiff's medical history, risks of surgery, complications of surgery, medications, diagnosis, prognosis, course of treatment, and discharge.

95.     Instead, during the September 2017 admission, Defendants relied on unqualified friends, written notes and charts, lip reading, and/or hand gesturing in an attempt to communicate with Plaintiff.

96.     Unqualified friends, written notes and charts, lip reading and/or hand gesturing did not provide Plaintiff with effective communication during the September 2017 admission.

97.     Throughout the September 2017 admission, Defendants failed to provide Plaintiff with an on-site, qualified sign language interpreter.

98.     Throughout the September 2017 admission, and because Defendants failed to provide Plaintiff with effective communication regarding his healthcare, Plaintiff was unable to exchange medically relevant information about Plaintiff's healthcare with Defendants' healthcare staff.

99.     Throughout the September 2017 admission and ongoing since that time, Plaintiff has been concerned that Defendants did not obtain a complete medical history and may have been unaware of Plaintiff's relevant medical history, medications, and symptoms.

100.     Throughout the September 2017 admission, during subsequent treatments and admissions, and ongoing to the current date, Plaintiff has experienced feelings of emotional distress, embarrassment, fear, anger, stigma, stress, and frustration because he was unable to effectively communicate with Defendants' healthcare providers about his cardiac bypass surgery.

101.     On or about November 20, 2017 (hereinafter "November 2017 visit"), post-cardiac surgery, Plaintiff arrived at PRMC's emergency room after experiencing spikes in Plaintiff's blood pressure and a racing heart.

102.     Again, Plaintiff requested that staff provide him with an on-site interpreter, this time by handing a card for a sign language interpreting service to the front desk staff.

103.     Instead of calling for a qualified, on-site interpreter, staff at PRMC failed to provide Plaintiff with any communication at all.

104.     Plaintiff's primary choice for communication for the November 2017 visit was a qualified, on-site interpreter.

105.     During the November 2017 visit, Plaintiff checked with PRMC front desk staff several times about an on-site interpreter, and staff indicated that they were looking into it.

106.     During the November 2017 visit, Plaintiff sat in the waiting area of the ER for approximately two hours.

107.     During one check-in with the front desk, staff at PRMC told Plaintiff they were looking for the VRI.

108.     Plaintiff did not wish to use the VRI to exchange medically relevant information during this emergency visit because it had failed to provide him with effective communication during prior visits to ETHC and NKMC.

109.     Plaintiff left PRMC during the November 2017 after waiting approximately two hours for communication, and before receiving any evaluation of his symptoms post-cardiac surgery or healthcare.

110.     During the November 2017 visit, Defendants denied Plaintiff medical treatment because they did not have a procedure established to provide effective communication to deaf persons who require emergency health care.

111.     At no time during the November 2017 visit did Defendants provide Plaintiff with effective communication.

112.     At no time during the November 2017 visit did Defendants evaluate Plaintiff for medical care.

113.     At no time during the November 2017 visit did Defendants provide medical care to Plaintiff.

114.     Throughout the November 2017 visit, Defendants failed to provide Plaintiff with a qualified, on-site sign language interpreter.

14

115.     Throughout the November 2017 visit, during subsequent treatments and admissions, and ongoing to the current date, Plaintiff has experienced feelings of emotional distress, embarrassment, fear, anger, stress, stigma, and frustration because he was unable to effectively communicate with Defendants' healthcare staff.

116.     On or about November 20, 2017, and after Plaintiff returned home from the ER at PRMC, Defendant called the hospital on his video phone to complain about the lack of effective communication he had just experienced.

117.     Plaintiff talked to a night manager who indicated to Plaintiff that the hospital must provide VRI to a deaf patient initially even if an on-site interpreter may be necessary to ensure effective communication.

118.     Defendants have a corporate policy, practice, procedure, requirement and/or custom of failing to evaluate a deaf or hard of hearing individual's communication needs.

119.     Defendants have a corporate policy, practice, procedure, requirement and/or custom of providing VRI to deaf patients initially even if an on-site interpreter is needed to ensure effective communication.

120.     Defendants have a corporate policy, practice, procedure, requirement and/or custom of not training their staff to evaluate the communication needs of deaf and hard of hearing individuals.

121.     Defendants have a corporate policy, practice, procedure, requirement and/or custom of not giving primary consideration to the request of an individual who is deaf or hard of hearing when determining necessary auxiliary aids or services to provide to a person who is deaf or hard of hearing to ensure effective communication.

15

122. At all times relevant to the facts of this Complaint, employees, agents, and staff of PRMC were acting as agents of Defendant Tennova Healthcare and Defendant CHS.

123. At all times relevant to the facts of this Complaint, PRMC was acting as an agent of Defendant CHS and Defendant Tennova Healthcare.

<u>CAUSES OF ACTION</u>

124. Plaintiff repeats the allegations of paragraphs 1 through 123 as fully set forth herein.

125. Defendants, through their policies, procedures, practices, requirements, customs, and/or conduct as described above, discriminated against Plaintiff on the basis of his disability and solely by reason of Plaintiff's disability.

126. Defendants' discriminatory conduct against Plaintiff was intentional and/or committed with reckless disregard of and with deliberate indifference to Plaintiff's civil rights.

127. Due to Defendants' discriminatory patterns, procedures, practices, requirements, customs, and/or conduct, Plaintiff has suffered and continues to suffer irreparable loss and injury, including but not limited to emotional distress, discrimination, stigma, exclusion from full participation in the benefits and services provided by Defendants, and receipt of benefits that are not equal to or as equally effective as the benefits provided by Defendants to persons without disabilities.

128. At all times during the September 2017 admission and November 2017 visit, healthcare providers at PRMC were acting as agents of Defendant Tennova Healthcare and Defendant CHS when they consistently failed to provide Plaintiff with qualified sign language interpreters as necessary for effective communication.

129. Section 504 provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from participation in,

be denied the benefits of or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . . " 29 U.S.C. § 794(a).

130. 45 C.F.R. § 84.52(a) specifies that "[i]n providing health … services or benefits, a recipient [of Federal funds] may not, on the basis of [a disability] [1] … (2) [a]fford a qualified [person with a disability] an opportunity to receive benefits or services that is not equal to that offered [persons without disabilities]; (3) [p]rovide a qualified [person with a disability] with benefits or services that are not as effective … as the benefits or services provided to others."

131. Section 504 provides that the term "program or activity" means all operations of— "(3)(A) an entire corporation … (ii) which is principally engaged in the business of providing … health care. . . . " 29 U.S.C. § 794(b)(3)(A)(ii).

132. Under Section 504, a qualified individual with a disability is any person who "has a physical or mental impairment that substantially limits one or more of such person's major life activities." 29 U.S.C. §794 (*referencing* 29 U.S.C. 755(a), *referencing* 42 U.S.C. § 12102(1)).

133. Defendants operate programs that receive Federal financial assistance.

134. Defendants are principally engaged in the business of providing healthcare.

135. Defendants are entities that are subject to the nondiscrimination requirements of Section 504 and its implementing regulation 45 C.F.R. § 84.52.

136. Plaintiff is a qualified individual with a disability and a protected person under Section 504 and its implementing regulation 45 C.F.R. § 84.52.

137. Pursuant to Title III of the ADA: "No individual with a disability shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public

---

[1] The term "disability" has been substituted for the term "handicapped" to reflect the preferred, updated term for an individual with a disability.

accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

138.    The ADA defines "place of public accommodation" as a "hospital" and a "professional office of a health care provider."  42 U.S.C. § 12181(7)(F).

139.    Title III of the ADA and its implementing regulations define disability with respect to an individual as "[a] physical or mental impairment that substantially limits one or more of the major life activities of such individual…." 28 C.F.R. § 36.104 (*referencing* 28 C.F.R. § 36.105(a)(1)(i)).

140.    Defendants are places of public accommodation as defined by Title III of the ADA and its implementing regulations.

141.    Defendants are entities subject to the nondiscrimination requirements of Title III of the ADA, 42 U.S.C. § 12181 *et seq.,* and its implementing regulations.

142.    Deafness is a physical impairment within the meaning of the ADA and its implementing regulations.

143.    Plaintiff is an individual with a disability within the meaning of the ADA and a protected person under the ADA and its implementing regulations.

144.    Pursuant to the ACA:  "A covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. 35.160 through 35.164."  45 C.F.R. § 92.202(a).

145.    The ACA states, in part:  "[A]n individual shall not, on the ground prohibited under section 504 of the Rehabilitation Act of 1973 . . . be excluded from participation in, be

18

denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . . ." 42 U.S.C. § 18116(a).

146.     A covered entity, as defined in the ACA is: "[a]n entity that operates a health program, any part of which receives Federal financial assistance." 45 C.F.R. § 92.4.

147.     The ACA defines "individual with a disability" as "any individual who has a disability as defined for the purpose of Section 504 . . . [w]here this part cross-references regulatory provisions applicable to a 'handicapped individual,' 'handicapped individual' means 'individual with a disability' as defined in this section." 45 C.F.R. § 92.4.

148.     Defendants operate health programs.

149.     Defendants receive Federal financial assistance.

150.     Defendants are covered entities subject to the nondiscrimination requirements of the ACA.  42 U.S.C. §18116 and its implementing regulations.

151.     Plaintiff is an individual with a disability and a protected person under the ACA and its implementing regulations.

152.     During Plaintiff's September 2017 admission and November 2017 visit to PRMC, Defendants subjected Plaintiff to discrimination on the basis of Plaintiff's disability and/or solely by reason of Plaintiff's disability.

153.     During Plaintiff's September 2017 admission to PRMC and November 2017 visit, Defendants excluded Plaintiff from participation in and/or denied Plaintiff the benefits of Defendants' programs, services, and/or activities at PRMC on the basis of Plaintiff's disability and/or solely by reason of Plaintiff's disability.

154.     Defendants continue to employ policies, practices, procedures, requirements, and/or customs that are discriminatory to Plaintiff and others similarly situated under Section

504 of the Rehab Act, Title III of the ADA, and the ACA, including, but not limited to requiring a deaf or hard of hearing individual to use VRI initially even when an on-site interpreter may be necessary to ensure effective communication.

<u>Count I: Violation of Section 504 of the Rehabilitation Act and implementing regulations 45 C.F.R. § 84.52 by discriminating against Plaintiff solely by reason of Plaintiff's disability</u>

155.    Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 154 above.

156.    Section 504 provides "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be … subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

157.    45 C.F.R. § 84.52(a) specifies "[i]n providing health … services or benefits, a recipient may not, on the basis of [a disability] … (2) [a]fford a qualified [person with a disability] an opportunity to receive benefits or services that is not equal to that offered [persons without disabilities]; (3) [p]rovide a qualified [person with a disability] with benefits or services that are not as effective … as the benefits or services provided to others."

158.    45 C.F.R. § 84.4(b)(2) states "[b]enefits, and services … must afford [persons with disabilities] equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs."

159.    At all times Plaintiff sought and received healthcare at Defendant PRMC, Plaintiff had a right to participate in and effectively communicate regarding his medical treatment by, among other things, receiving explanations of risks, benefits, and alternatives for each procedure; receiving instructions for each procedure; providing informed consent for each procedure;

expressing any concerns or questions Plaintiff had regarding each procedure; and having an opportunity to resolve any complications or concerns arising from each procedure.

160. Because (1) Plaintiff's primary language is ASL, not written or spoken English, (2) the communications in a medical setting are lengthy and complex, and (3) VRI would not have been appropriate, Plaintiff required the services of qualified, on-site sign language interpreters to effectively communicate with healthcare providers about medically relevant information during the time he was a patient at PRMC from the September 2017 admission to the November 2017 visit, and ongoing to the present.

161. Because Defendants did not provide Plaintiff with effective communication during the September 2017 admission and the November 2017 visit, Defendants discriminated against Plaintiff solely by reason of Plaintiff's disability.

162. Because Defendants did not provide Plaintiff with effective communication during the September 2017 admission and the November 2017 visit, Plaintiff did not exchange medically relevant information with his health care providers concerning the risks, benefits, and alternatives to each procedure that was performed on Plaintiff; did not receive effective communication concerning informed consent for each procedure; did not have the opportunity to express concerns or ask questions regarding each procedure; and did not have the opportunity to resolve concerns arising from each procedure.

163. By limiting and denying Plaintiff's participation in Plaintiff's healthcare, Defendants discriminated against Plaintiff solely by reason of Plaintiff's disability.

164. By limiting and denying Plaintiff's participation in Plaintiff's healthcare, Defendants discriminated against Plaintiff and subjected Plaintiff to services and benefits that were

not equal to, or as effective as, the services and benefits Defendants provide at PRMC to persons without hearing disabilities.

165.     By limiting and denying Plaintiff's participation in Plaintiff's healthcare, Defendants denied Plaintiff his right to exchange and effectively communicate medically relevant information with his health care providers.

166.     Defendants' discriminatory conduct against Plaintiff was intentional and/or committed with reckless disregard of and with deliberate indifference to Plaintiff's rights.

167.     The violations in paragraphs 1 through 167 are continuous and ongoing.

Count II: Violation of Section 504 of the Rehabilitation Act and implementing regulation 45 C.F.R. § 84.52 by failure to provide appropriate auxiliary aids to Plaintiff

168.     Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 167 above.

169.     Implementing regulation 45 C.F.R. § 84.52(d) mandates that a recipient of Federal financial assistance employing fifteen persons or more "shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

170.     Defendants employ more than 15 persons.

171.     Defendants are the recipients of Federal financial assistance.

172.     Defendants are entities subject to the nondiscrimination requirements of Section 504.

173.     Under Section 504, auxiliary aids include "interpreters."  45 C.F.R. § 84.52(d)(3).

174.     Because (1) Plaintiff's primary language is ASL, not written or spoken English, (2) the communications in a medical setting are lengthy and complex, and (3) VRI would not have been appropriate, Plaintiff did not and could not effectively communicate with PRMC health care

22

providers without the aid of qualified, on-site sign language interpreters during the time Plaintiff was a patient at PRMC from the September 2017 admission to the November 2017 visit, and ongoing to the present.

175.    Plaintiff required the services of qualified, on-site sign language interpreters to effectively communicate with healthcare providers about medically relevant information during the time he was a patient at PRMC from the September 2017 admission to the November 2017 visit, and ongoing to the present.

176.    By failing to provide Plaintiff with the services of qualified, on-site sign language interpreters, Defendants failed to provide Plaintiff with appropriate auxiliary aids/services necessary to give Plaintiff an equal opportunity to benefit from health care services provided at PRMC from the September 2017 admission to the November 2017 visit, and ongoing to the present.

177.    By failing to provide Plaintiff with the services of qualified sign language interpreters, Defendants failed to provide Plaintiff with appropriate auxiliary aids/services necessary to give Plaintiff an equal opportunity to benefit from healthcare services provided at PRMC from the September 2017 admission to the November 2017 visit, and ongoing to the present.

178.    By failing to provide Plaintiff with the services of qualified, on-site sign language interpreters, Defendants denied Plaintiff his right to exchange and effectively communicate medically relevant information with his healthcare providers.

179.    Defendants' discriminatory conduct against Plaintiff was intentional and/or committed with reckless disregard of and deliberate indifference to Plaintiff's rights.

180.    The violations in paragraphs 1 through 180 are continuous and ongoing.

<u>Count III: Violation of Section 504 of the Rehabilitation Act and implementing</u>
<u>regulation 45 C.F.R. § 84.52 by failure to establish a procedure for effective</u>
<u>communication with persons with hearing disabilities requiring emergency health care</u>

181.    Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 180 above.

182.    Implementing regulation 45 C.F.R. § 84.52(c) mandates that a "recipient hospital [of Federal financial assistance] that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care."

183.    From the time Plaintiff arrived at PRMC's emergency department during the November 2017 visit until the time he left PRMC, Defendants did not have an established procedure for providing effective communication to deaf persons seeking emergency medical care.

184.    From the time Plaintiff arrived at PRMC's emergency department during the November 2017 visit until the time he left PRMC, Defendants did not have an established procedure for evaluating the communication needs of deaf and hard of hearing individuals.

185.    Plaintiff did not receive effective communication, emergency medical care, or even a medical evaluation during the November 2017 visit.

186.    When Plaintiff arrived for emergency care at PRMC during the November 2017 visit, Defendants had a discriminatory policy, practice, procedure, requirement and/or custom that required a deaf or hard of hearing individual to use VRI initially even when an on-site interpreter may be necessary to ensure effective communication.

187.    By failing to have an established policy and procedure for ensuring effective communication with deaf persons seeking emergency medical care, Defendants discriminated

against Plaintiff solely by reason of Plaintiff's disability in violation of Section 504 and implementing regulation 45 C.F.R. § 84.52(c).

188.     Defendant's discriminatory conduct against Plaintiff was intentional and/or committed with reckless disregard of and deliberate indifference to Plaintiff's rights.

189.     The violations in paragraphs 1 through 189 are continuous and ongoing.

### Count IV: Violation of Title III of the ADA by discriminating against Plaintiff on the basis of disability

190.     Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 189 above.

191.     Pursuant to the ADA: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

192.     By failing to provide effective communication to Plaintiff during the September 2017 admission and November 2017 visit, Defendants have excluded Plaintiff from participation in and/or denied Plaintiff the benefits of Defendants' programs, services, and/or activities at PRMC on the basis of Plaintiff's disability.

193.     By failing to provide effective communication to Plaintiff during the September 2017 admission and November 2017 visit, Defendants have subjected Plaintiff to discrimination on the basis of Plaintiff's disability.

194.     By failing to provide effective communication to Plaintiff during the September 2017 admission and November 2017 visit, Defendants denied Plaintiff his right to exchange and effectively communicate medically relevant information with his healthcare providers.

195.     Defendants' discriminatory conduct against Plaintiff was intentional and/or committed with reckless disregard of and deliberate indifference to Plaintiff's rights.

196.     The violations in paragraphs 1 through 196 are continuous and ongoing.

<u>Count V: Violation of ADA and implementing regulations by failure<br>to provide auxiliary aids and services</u>

197.     Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 196 above.

198.     The implementing regulations for Title III of the ADA state that: "A public accommodation shall take those steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services . . . ." 28 C.F.R. § 36.303(a).

199.      The implementing regulations for Title III of the ADA also state:  "(1) A public accommodation shall furnish appropriate auxiliary aids and services when necessary to ensure effective communication with individuals with disabilities." 28 CFR § 36.303(c)(1).

200.     Title III of the ADA defines "auxiliary aids and services," in part, as "qualified interpreters."  28 C.F.R. § 36.303(b)(1).

201.     The implementing regulations for Title III of the ADA state that "the type of auxiliary aid or service necessary to ensure effective communication will vary in accordance with the method of communication used by the individual; the nature, length, and complexity of the communication involved; and the context in which the communication is taking place." 28 CFR § 36.303(c)(1)(ii).

202.     The implementing federal regulations also state that "[i]n order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in

such a way to protect the privacy and independence of the individual with the disability." 28 C.F.R. § 36.303(c)(1)(ii).

203.    VRI was not an appropriate nor reliable auxiliary aid or service for Plaintiff for the September 2017 admission because Plaintiff could not always sit up in bed to see the VRI screen pre-and post-op cardiac bypass surgery, and because VRI at ETHC, which is housed in the same building as PRMC, and had failed to provide him with effective communication only a few weeks prior to the September 2017 admission.

204.    VRI was not an appropriate nor reliable auxiliary aid or service for Plaintiff for the November 2017 visit because VRI at ETHC, which is housed in the same building as PRMC, had failed to provide him with effective communication prior to the November 2017 visit.

205.    Written notes and charts, lip reading, and/or hand gesturing were not appropriate nor reliable auxiliary aids or services for Plaintiff during the September 2017 admission because Plaintiff communicates primarily in ASL, not through written English, lip reading, or hand gestures, and because medical information about cardiac bypass surgery is lengthy and complex.

206.    Staff at PRMC could not describe and explain the risks, complications, medical prognosis, care, and gather informed consent from Plaintiff regarding his cardiac bypass surgery through written notes, charts, lip reading, and/or hand gestures during the September 2017 admission.

207.    Plaintiff could not ask questions or exchange medically relevant information with PRMC staff and healthcare providers using written notes and charts, lip reading, and/or hand gesturing during the September 2017 admission.

208.    Plaintiff required the aid of qualified, on-site interpreters for effective communication during the September 2017 admission and the November 2017 visit.

209. By repeatedly refusing to provide qualified, on-site sign language interpreters for Plaintiff during the September 2017 admission and November 2017 visit, Defendants have subjected Plaintiff to discrimination on the basis of Plaintiff's disability.

210. By repeatedly failing to provide qualified, on-site sign language interpreters for Plaintiff during the September 2017 admission and the November 2017 visit, Defendants have failed to afford Plaintiff an equal opportunity to participate in, and enjoy the benefits of, the services, programs, and/or activities of Defendants.

211. By repeatedly refusing to provide qualified, on-site sign language interpreters for Plaintiff during the September 2017 admission and November 2017 visit, Defendants have failed to provide auxiliary aids/services in an accessible format, in a timely manner, and in such a way to protect the privacy and independence of Plaintiff.

212. By repeatedly refusing to provide qualified, on-site sign language interpreters for Plaintiff during the September 2017 admission and November 2017 visit, Defendants denied Plaintiff his right to exchange and effectively communicate medically relevant information with his healthcare providers.

213. By repeatedly relying on written notes, lip reading, and/or hand gesturing in an attempt to communicate medical information with Plaintiff during the September 2017 admission, Defendants have failed to afford Plaintiff an equal opportunity to participate in, and enjoy the benefits of, the services programs and/or activities of PRMC.

214. By repeatedly relying on written notes, lip reading, and/or hand gesturing in an attempt to communicate medical information with Plaintiff during the September 2017 admission, Defendants have failed to provide auxiliary aids/services in an accessible format, in a

28

timely manner, and in such a way to protect the privacy and independence of the individual with a disability.

215.     By repeatedly relying on written notes, lip reading, and/or gesturing in an attempt to communicate medically relevant information with Plaintiff during the September 2017 admission, Defendants have subjected Plaintiff to discrimination on the basis of Plaintiff's disability.

216.     By repeatedly relying on written notes, lip reading, and/or gesturing in an attempt to communicate medically relevant information with Plaintiff during the September 2017 admission, Defendants denied Plaintiff his right to exchange and effectively communicate medically relevant information with his healthcare providers.

217.     Defendants' discriminatory conduct against Plaintiff was intentional and/or committed with reckless disregard of and deliberate indifference to Plaintiff's rights.

218.     The violations in Paragraphs 1 through 218 are continuous and ongoing.

Count VI:  Violation of the ADA and its implementing regulations by requiring plaintiff to bring another individual to interpret and relying on an adult accompanying plaintiff to interpret

219.     Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 218 above.

220.     A "qualified interpreter" is defined in the federal regulations as "an interpreter, who, via a video remote interpreting (VRI) service or an on-site appearance, is able to interpret effectively, accurately, and impartially, both receptively and expressively, using any necessary specialized vocabulary.  Qualified interpreters include, for example, sign language interpreters . . . ."  28 C.F.R. § 36.104.

221.     First Friend and Second friend are not qualified interpreters.

222.     The implementing regulations for Title III of the ADA state: "A public accommodation shall not require an individual with a disability to bring another individual to interpret for him or her." 28 C.F.R. § 36.303(c)(2).

223.     The implementing regulations for Title III of the ADA state: "A public accommodation shall not rely on an adult accompanying an individual with a disability to interpret or facilitate communication except (1) in an emergency involving an imminent threat to the safety or welfare of an individual or the public where there is no interpreter available; or (2) where the individual with a disability specifically requests that the accompanying adult interpret or facilitate communication, the accompanying adult agrees to provide such assistance, and reliance on that adult for such assistance is appropriate under the circumstances." 28 C.F.R. § 36.303(c)(3).

224.     By requiring Plaintiff to bring his own interpreter and relying on unqualified adults accompanying Plaintiff and to interpret during the September 2017 admission, Defendants have subjected Plaintiff to discrimination on the basis of Plaintiff's disability.

225.     By requiring Plaintiff to bring his own interpreter and relying on unqualified adults accompanying Plaintiff to interpret during the September 2017 admission, Defendants have failed to afford Plaintiff an equal opportunity to participate in, and enjoy the benefits of, the services, programs, and/or activities of Defendants.

226.     By requiring Plaintiff to bring his own interpreter and relying on unqualified adults accompanying Plaintiff to interpret during the September 2017 admission, Defendants have failed to provide auxiliary aids/services in an accessible format, in a timely manner, and in such a way to protect the privacy and independence of Plaintiff.

227.     By requiring Plaintiff to bring his own interpreter and relying on unqualified adults accompanying Plaintiff to interpret during the September 2017 admission, Defendants have denied Plaintiff his right to exchange and effectively communicate medically relevant information with his healthcare providers.

228.     Defendants' discriminatory conduct against Plaintiff was intentional and/or committed with reckless disregard of and deliberate indifference to Plaintiff's rights.

229.     The violations in Paragraphs 1 through 229 are continuous and ongoing.

Count VII:  Violation of the ACA by failing to give primary consideration to the request of plaintiff for the choice of auxiliary aid or service

230.     Plaintiff alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 229 above.

231.     The implementing regulations of the ACA state:  "A covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communication with others in health care programs and activities, in accordance with the standards found at 28 C.F.R. 35.160 through 35.164.  Where the regulatory provisions referenced in this section use the term 'public entity,' the term 'covered entity' shall apply in its place."  45 C.F.R. § 92.202(a).

232.     28 C.F.R. § 35.160 states:  "In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities."

233.     By failing to give primary consideration to the request of Plaintiff for an on-site interpreter during the September 2017 admission and the November 2017 visit, Defendants have subjected Plaintiff to discrimination solely by reason of Plaintiff's disability.

234.    By failing to give primary consideration to the request of Plaintiff for an on-site interpreter during the September 2017 admission and the November 2017 visit, Defendants have failed to afford Plaintiff an equal opportunity to participate in, and enjoy the benefits of, the services, programs, and/or activities of Defendant.

235.    By failing to give primary consideration to the request of Plaintiff for an on-site interpreter during the September 2017 admission and the November 2017 visit, Defendants have failed to provide auxiliary aids/services in an accessible format, in a timely manner, and in such a way to protect the privacy and independence of the individual with a disability.

236.    By failing to give primary consideration to the request of Plaintiff for an on-site interpreter during the September 2017 admission and the November 2017 visit, Defendants denied Plaintiff his right to exchange and effectively communicate medically relevant information with his health care providers.

237.    Defendants' discriminatory conduct against Plaintiff was intentional and/or committed with reckless disregard of and deliberate indifference to Plaintiff's rights.

238.    The violations in Paragraphs 1 through 238 are continuous and ongoing.

<u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff request that this Court:

239.    Declare the actions of Defendants to be in violation of the ADA, ACA, and Section 504 and their implementing regulations.

240.    Order Defendants, their members, partners, agents, employees, successors, and transferees to cease discriminating against Plaintiff and all similarly situated persons on the basis of disability and solely by reason of disability in the provision of healthcare services.

241.    Permanently enjoin Defendants, their agents, employees, successors, and transferees from discriminating on the basis of disability and solely on the basis of disability against any person with a disability in violation of the ADA and Section 504 and their implementing regulations.

242.    Order Defendants to confer with Plaintiff's counsel to develop a nondiscrimination policy and detailed procedure for ensuring effective communication with people with disabilities, and to obtain approval of Plaintiff's counsel prior to implementing such policy and procedure at all hospitals and medical facilities owned and operated by Defendant Tennova Healthcare and Defendant CHS.  Such policy and procedure shall include but not be limited to:   Provisions to ensure effective communication for patients and companions with disabilities, including the provision of qualified, on-site sign language interpreters; refraining from requiring individuals with disabilities to bring their own sign language interpreter; and refraining from relying on adults accompanying individuals with disabilities to interpret for individuals with disabilities, except in the narrow circumstances outlined in 28 C.F.R. § 36.303(c)(3).

243.    Order Defendants to confer with Plaintiff's counsel to develop an appropriate procedure to ensure effective communication with persons with disabilities requiring emergency health services at any of Defendant Tennova Healthcare and Defendant CHS' hospitals and medical facilities, including but not limited to PRMC, and to obtain approval of Plaintiff's counsel prior to implementing such procedure.

244.    Order Defendants to prominently post signage about the availability of free, qualified sign language interpreters throughout the emergency department, hospital, and doctor's

offices at all of Defendant Tennova Healthcare and Defendant CHS' hospitals and medical facilities, including, but not limited to, PRMC.

245.    Order Defendants to provide qualified, on-site sign language interpreters for Plaintiff for all inpatient and outpatient visits to all Defendant Tennova Healthcare and Defendant CHS's hospitals and healthcare facilities including but not limited to medical appointments, treatments, visits to the emergency department and hospitalizations.

246.    Award Plaintiff compensatory damages in an amount sufficient to compensate Plaintiff for Plaintiff's injuries, including but not limited to emotional distress, embarrassment, stigma, frustration, fear, lack of meaningful access to health care, and violation of Plaintiff's civil rights, as a result of Defendants' discriminatory conduct.

247.    Award Plaintiff all fees and costs of this lawsuit, including litigation expenses, out-of-pocket expenses, and reasonable attorneys' fees in accordance with all applicable provisions of law, including but not limited to the provisions of 42 U.S.C § 12205 and 29 U.S.C § 794A(b).

248.    Order Defendants to timely provide for all existing and newly hired staff at its facilities mandatory training on ADA, ACA, and Section 504 compliance, including but not limited to requirements and procedures for use of qualified sign language interpreters and disability sensitivity including information about Deaf culture.

249.    Order Defendants to provide to attorneys for Plaintiff an annual written report confirming receipt of the training referenced above by all staff at all facilities operated by Defendants Tennova Healthcare and CHS in Tennessee.  This report should be provided for a period of five years from the date of this Order with the first report provided no later than one year of the date of this Order.

34

250.    Order Defendants to provide to attorneys for Plaintiff an annual written report listing: The number of patients who requested a qualified sign language interpreter at Defendants' facilities in Tennessee; the number of patients who were provided a qualified sign language interpreter at all Defendants' facilities in Tennessee; and the auxiliary aid or service provided. This report should be provided for a period of five years from the date of this Order with the first report provided no later than one year of the date of this Order.

251.    Vest attorneys for Plaintiff with the power to monitor Defendants for compliance with and implementation of policies, procedures, and training created and described herein and report to the Court any violations found as a result of monitoring.

252.    Order Defendants to pay reasonable attorneys' fees to Plaintiff's attorneys for future monitoring of compliance with remedies listed herein.

253.    Order such other and further relief as the Court may deem just and proper.

Date: September 19, 2018                    Respectfully Submitted,

                                            /s/ Sherry A. Wilds
                                            Sherry A. Wilds (BPR #021756)
                                            Disability Rights Tennessee
                                            2 International Plaza STE 827
                                            Nashville, TN 37217
                                            (615) 298-1080

                                            /s/ Stacie L. Price
                                            Stacie L. Price (BPR #030625)
                                            Disability Rights Tennessee
                                            2 International Plaza STE 827
                                            Nashville, TN 37217
                                            (615) 298-1080

<u>/s/ Susan Mee</u>
Susan Mee (BPR # 014648)
Disability Rights Tennessee
2 International Plaza STE 827
Nashville, TN 37217
(615) 298-1080

36